UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOHNNY LEE CISSELL                                                   PETITIONER

v.                                              CIVIL ACTION NO. 3:10-CV-325-S

CLARK TAYLOR, WARDEN                                               RESPONDENT

## REPORT AND RECOMMENDATION

This matter is before the court on Johnny Lee Cissell's *pro se* petition for a writ of

habeas corpus under 28 U.S.C. § 2254.  The petitioner alleges numerous due process violations

and ineffective assistance of trial counsel as grounds for habeas relief from his state conviction.

The respondent, Clark Taylor, argues that the petition should be denied on grounds of procedural

default and on the merits.  The court referred this matter to the undersigned magistrate judge

pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for a report and recommendation.  For reasons

stated below, the magistrate judge will recommend that the court deny the petition.

### I. FINDINGS OF FACT

1)      A jury convicted the petitioner in March 2004 of first-degree rape and first-degree

assault of his three-year-old daughter.  The Jefferson Circuit Court sentenced the petitioner to

serve twenty-four years in prison.  The petitioner appealed, and the Supreme Court of Kentucky

affirmed the conviction on January 19, 2006.

2)      The Supreme Court of Kentucky summarized the facts of the case as follows:

> [The petitioner] and his girlfriend, Felisha Roberts, lived
> together in a Louisville residence with their three biological
> children, the oldest of whom was three-year old K.C., the victim in
> this case.  At approximately 7:30 a.m. on June 14, 2002, Roberts
> left for work, leaving [the petitioner] and the three children asleep

in the house.  Sometime around 10:30 a.m that morning, [the petitioner's] mother, Diana Cissell, arrived at the residence to pick up the three children so that [the petitioner] could search for a job. Upon her arrival, Cissell discovered that K.C. was bleeding heavily from her vaginal area.  Cissell drove [the petitioner] and K.C. to Roberts's workplace.  After leaving the other two children with Roberts's grandmother, Cissell, Roberts, and [the petitioner] then took K.C. to Kosair Children's Hospital.

Treating emergency room physicians determined that K.C. had a large vaginal laceration that penetrated into her rectum. They also noticed a small petechial bruise around one eye and slight bruising on her inner thighs.  Dr. Betty Spivack, a forensic pediatrician, concluded that K.C. had sustained an acute trauma caused by the forcible penetration of her vagina by an object too large for her vaginal canal – possibly an adult penis or other object.  She also concluded that such injury was not caused by an accidental "straddle" injury.  K.C. underwent surgery that evening and remained hospitalized for three days thereafter.

Detective Whelan, of the Louisville Metro Police Department's Crimes Against Children Unit (CACU), was called to the hospital where she interviewed Roberts, Cissell, and [the petitioner].  Though he was alone with the three children that morning, [the petitioner] denied any knowledge of the cause of K.C.'s injury.  He advised that K.C. often stood on the commode to brush her teeth and speculated that she might have fallen and thereby sustained the injury, though he never heard her fall or cry out.  Roberts consented to a search of the residence, where police recovered several items, including K.C.'s bloody clothing and a toilet plunger with traces of K.C.'s blood on the end of the handle. A videotape and various photographs were taken of the residence during the search. [The petitioner] was indicted on October 15, 2002.[1]

3)      The petitioner testified at trial in his defense and denied causing the child any

injury.  The defense also presented testimony from an expert witness, Dr. Janice Ophoven, "who

opined that the injury likely occurred from twelve to twenty-four hours prior to the [child's]

---

[1]Resp't Appendix at 90 (DN 14), *Cissell v. Commonwealth*, 2006 WL 141613, *1 (Ky., Jan. 19, 2006).

arrival at the hospital ... [based on] elevated white blood cell count and the blood clotting around the vaginal wound."[2]

4)      The prosecution's expert, Dr. Betty Spivack, offered an opinion in rebuttal that, based on the hematocrit levels in [the child's] blood and the volume of blood lost, the injury occurred within four hours of her arrival at the hospital.[3]  After hearing all the evidence, the jury believed the prosecution's case that during the three-hour period the petitioner was alone with the child on the morning in question, the petitioner raped and assaulted the child with the handle of a toilet plunger or other object.

5)      The petitioner unsuccessfully appealed the jury verdict and then filed a *pro se* motion to vacate the judgment on numerous grounds, primarily ineffective assistance of trial counsel.  The trial court appointed counsel, who filed a supplemental memorandum in support of the motion to vacate.  The trial court denied the motion, without an evidentiary hearing, in January 2008.  The petitioner appealed, and the Kentucky Court of Appeals affirmed on May 22, 2009.[4]  The Supreme Court of Kentucky denied discretionary review on January 13, 2010.

6)      In this federal petition, the petitioner maintains that the child sustained an accidental straddle injury and that trial counsel was ineffective in presenting his defense.[5]  In

---

[2]Appx. 95.

[3]*Id.*

[4]App. 172, *Cissell v. Commonwealth*, 2009 WL 1424010 (Ky.App., May 22, 2009).

[5]Attached to the petition is a memorandum in support, which consists of 81 pages, and does not appear in the electronic docket due its volume.  The memorandum does not contain page or paragraph numbers.  The memorandum is divided into a Statement of Facts and "Argument Number 1" through "Argument Number 11," but this supplies confusing reference because the claims and argument appear in repetitious fashion throughout the Argument sections.  For purposes of this Report's citation to the memorandum in support, the magistrate judge has attributed a paragraph number for each tab indentation, however slight, in the text of the memorandum.  This means Argument Number I contains a heading and paragraphs 1 through 22; Argument Number II contains a heading and paragraphs 1 through 19; and so on, with Argument Number III beginning on page 14 of the argument portion of the

support of his federal claims, the petitioner's memorandum includes a statement of facts, in which the petitioner essentially restates his trial testimony, as follows:

>    [L]ike any other day, [Petitioner] ran the water and began getting his two youngest children ready for their bath. The oldest daughter [the victim], who was just two weeks from turning four-years (4) old, used the toilet and got into the bathtub by herself. [The two younger children] had dirty diapers [and the petitioner] first cleaned up the two-year (2) old ... and sent him to get into the bathtub. Then, as Petitioner began changing one-year (1) old['s] diaper, [the grandmother] knocked on the side door of the house. Petitioner told his mother [the grandmother] to wait a minute because he was changing a dirty diaper and soon answered the door with the baby in his arms.
>
>    [The grandmother] followed the Petitioner into the bathroom, ... a few minutes later, Petitioner removed [the victim] from the bathtub, wrapped her in a towel, and asked his mother to dress her while he bathed the other two children. However, ... [the victim] said she needed to use the toilet. [The grandmother] dried her off, put the towel around her, and sat her on the toilet. At this time, [the grandmother] noticed a smudge on [the victim's] leg and thought maybe she had not made it to the toilet in time. [The victim] also grunted a bit as if she was having a difficult time using the bathroom.
>
>    After [the victim] said she was finished, [the grandmother] went to wipe her but noticed there was blood in the toilet. This

---

memorandum.

       In addition, there is a twenty-two page supplemental petition, which addresses Arguments I and V with citation to exhibits, including a deposition transcript of Dr. Betty Spivak, forensic pediatrician, who later appeared at trial to testify in the commonwealth's case in chief.

was the first real instance that anyone had of any injury to [the victim]. ... The Petitioner became very upset that his daughter was bleeding and tried to see what was wrong with her. ...[The grandmother] [wiped up] blood that had dripped on the toilet seat and on the floor in order to keep the kids from walking through it and picking up the plunger that had fallen in the floor. ... [W]hen [the grandmother] started to put underwear on [the victim] some blood dripped on them. [The grandmother] had Petitioner bring her another pair of underwear, and she placed a sanitary napkin in there.

Because [the victim] resisted any attempts by [the grandmother] to examine her and continued to bleed, Petitioner and his mother decided that [the victim] needed to go to the hospital.  Hoping to stop or at least slow down the bleeding while they got the other two children ready to go, [the grandmother] changed [the victim's] underwear and laid her down on her younger brother's bed. ... [The grandmother] changed [the victim's] underwear and sanitary napkin once again ... Petitioner threw the ruined pairs of underwear and most of the rags and towels used to clean up the blood in the kitchen trash can ... Petitioner then put the garbage in the outside trashcan (sic) and loaded all three children into [the grandmother's] van.[6]

7)     The petitioner's testimony of these events informs the basis for many of his claims in this federal petition.  The magistrate judge will now turn to the petitioner's claims for habeas relief.

---

[6]Petition (DN 1).

## II.  CONCLUSIONS OF LAW

**A.  Standard of Review**

8)    The federal habeas statute, as amended in the Antiterrorism and Effective Death Penalty Act of 1996, provides relief from a state conviction if the petition satisfies one of the following conditions:

> the [state court's] adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This statute further provides that state court determinations of fact are presumed to be correct.  § 2254(e)(1).

9)    The petitioner carries the burden of proof under § 2254(d), which is a "highly deferential standard for evaluating state-court rulings," unlike review on direct appeal, and "demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, — U.S. — , 131 S.Ct. 1388, 1398 (2011).  When the state court articulates the correct legal rule in its review of a claim, a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 411 (2000); *see also Tolliver v. Sheets*, 594 F.3d 900, 916 (6th Cir. 2010) (stating that a dual finding, incorrectness and unreasonable-ness, are essential elements to habeas relief.)

-6-

10)      In the same vein, a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court unless the state determination is unreasonable.  *Rice v. Collins*, 546 U.S. 333, 341-42 (2006) (stating, "Reasonable minds reviewing the record might disagree ... but on habeas review that does not suffice to supercede the trial court's credibility determination.").  A federal court must assess whether the state court's decision was unreasonable in light of the record that was before the state court.  *Cullen,* 131 S.Ct. at 1400.

11)      The AEDPA's deferential standard of review does not apply, however, if the petitioner fairly presented a federal claim but the state court failed to evaluate it on the merits. *Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).  In this event, the federal habeas court reviews *de novo* questions of law and mixed questions of law and fact.  *Id*.

## B.  Ineffective Assistance of Trial Counsel

12)      The petitioner asserts numerous violations of his Sixth Amendment right to the effective assistance of counsel.  To establish ineffective assistance of counsel, the petitioner must show two essential elements:  that counsel's performance was deficient and that the deficiency prejudiced the defense to such a degree that the trial result is unreliable or considered to be unfair.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  On federal habeas review, the petitioner is entitled to relief if the state court's rejection of the claim was contrary to, or involved an unreasonable application of *Strickland*, or rested on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Sneed v. Johnson*, 600 F.3d 607, 610 (6th Cir. 2010).

13)     To meet *Strickland's* deficient performance prong, the petitioner must identify

acts that were "outside the wide range of professionally competent assistance." *Strickland*, 466

U.S. at 690.  Indeed, *Strickland* requires the court to apply a strong presumption that counsel

"rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment." *Id.*   Thus, the court must determine whether counsel's conduct "fell

below an objective standard of reasonableness." *Id.,* at 688.  To meet *Strickland's* prejudice

prong, the petitioner must show a reasonable probability that the jury would have had a

reasonable doubt respecting guilt but for counsel's unprofessional errors.  *Id.*, at 695 ; *see also*

*Evans v. Hudson*, 575 F.3d 560, 566 (6th Cir. 2009) (stating the prejudice prong requires

outcome-determinative error and a fundamentally unfair or unreliable proceeding) (citing

*Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993)).

## 1.  Cross-Examination of Forensic Pediatrician

14)     The petitioner argues that counsel inadequately cross-examined Dr. Betty Spivak,

forensic pediatrician, as anticipated in advance of trial.[7]  In attorney-client correspondence,

defense counsel stated that at trial she intended to attack inconsistencies in Dr. Spivak's

deposition testimony about petechial bruising.[8]  The petitioner claims he received ineffective

assistance of counsel because the expected cross-examination did not occur.

15)     The respondent objects to this claim because it appears for the first time in the

petitioner's amended/supplemental petition.  The respondent argues that this portion of the

amended pleading, and the attached discovery deposition, is time-barred because it does not

---

[7]Amendment to Argument I (DN 17).

[8]Petition attachment, Letter dated May 11, 2003 (last page) (DN 1-2 p. 9 of 14).

relate back to the original claim.[9]  The magistrate judge concludes that a complex and lengthy analysis of this threshold defense is not required in reaching a determination of this claim because the claim itself plainly lacks merit.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (holding that a ruling on procedural default is not necessary if the petitioner cannot prevail on the merits).

16)     In her deposition, Dr. Spivak testified that she was asked to review the photographs and medical record of the victim in this case, first at the request of treating physician, Paige Hertweck, pediatric gynecologist, and later Detective Leigh Whalen, Jefferson County Crimes Against Children Unit.[10]  Dr. Spivak stated that the victim sustained a fourth degree perineal tear and had associated bruises on the inside of her thighs and petechial bruising around her left eye.  Dr. Spivak testified that the victim's injuries were typical of severe rape injuries, and not of a fall, or straddle injury, or of a self-inflicted injury.[11]  As to the thigh bruises in particular, Dr. Spivak stated that she did not comment in her report to a reasonable degree of certainty on the causes of those injuries because she had not reviewed any photographs of the bruising.[12]  Dr. Spivak further opined that the injury occurred no more than three hours prior to seeking medical attention, given her hematocrit levels, blood loss of 20 percent, which if untreated would have resulted in loss of life.[13]  Dr. Spivak also noted that it is standard for consultants to reach conclusions based on review of medical records rather than direct

---

[9]Order granting motion to amend petition (DN 18); Response to Amended Petition (DN 19, 26).

[10]Spivak Depo. at 5, Attachment to Amended Petition, Argument I (Dn 17-5, p. 5 of 31).

[11]*Id.,* at 6-8 (pp. 6-8 of 31).

[12]*Id.,* at 16 (p, 16 of 31).

[13]*Id.,* at 11, 19 (pp. 11, 19 of 31).

examination of a patient.

17)     Dr. Spivak affirmatively testified that a fall from the toilet seat would not have resulted in these injuries and any claim that the child did not cry is inconsistent with the degree of this injury.  Dr. Spivak stated, "So to say that this child was not symptomatic and she was just sitting calmly on the toilet, bleeding into the toilet, does not match the nature of the injury at all."[14]

18)     The petitioner emphasizes that Dr. Spivak testified that she did not know the size of the bruising on the thighs, there being no photographs or mention of size in the medical records, and that she did not in her report state to a reasonable degree of certainty on the causes of those injuries.[15]  According to the petitioner, however, Dr. Spivak testified at trial inconsistent with this deposition testimony, and trial counsel failed to impeach her on this point.  With this omission, the petitioner argues, trial counsel missed an opportunity to undermine Dr. Spivak's credibility, which precluded the fact-finder from independently judging the merits of the case, and which constituted an error so prejudicial that the outcome may have different.[16]

19)     The magistrate judge disagrees with the petitioner's argument and concludes this ineffective assistance claim is completely lacking in merit.  First, the petitioner elevates the testimony about bruising beyond its true significance in the full context of Dr. Spivak's compelling testimony: because the child sustained a fourth-degree perineal tear, the petitioner's version – that the child exhibited no signs of bleeding until the grandmother placed her on the

---

[14]*Id.,* at 25 (pp. 25 of 31).

[15]Amended Petition, Argument I at ¶ 11 (DN 17, p.5 of 22).

[16]*Id.,* at ¶¶ 13-14.

toilet – is categorically false.[17]

20)     Moreover, trial counsel's failure to challenge this testimony because the witness did not personally examine the child is no example of deficient cross-examination, under *Strickland*.[18]  Rather, counsel exhibited reasonable trial strategy in declining to challenge the witness on this point, when, as the witness here testified, physicians routinely reach valid forensic conclusions based on a well-documented medical record, relying on treating physician's or surgeon's physical examination of a patient.

21)     The magistrate judge will therefore recommend denying this ineffective assistance claim for failure to establish either prong under *Strickland*.

### 2.  Unchallenged Medical Examination

22)     The petitioner alleges that counsel should have questioned whether the medical examination of the child caused further injury or fresh bleeding, to refute the prosecution's medical testimony that the hematocrit levels indicated injury within a few hours of hospitalization.[19]  The trial court rejected this argument, reasoning that the petitioner failed to show ineffective assistance because counsel hired a medical expert who could have rendered an opinion on this point had there been evidence to support it.[20]  The respondent argues that although this claim was presented to the trial court on collateral review, the petitioner has procedurally defaulted federal review because he failed to present this claim to the Kentucky

---

[17]*Id.,* attached Spivak Depo. (p. 18 of 31) ("With this degree of tearing, bleeding starts immediately ... [and] the blood vessels are wide open and ripped, and it's a very vascular area which has a high blood flow.").

[18] *Id.,* at ¶ 5.

[19]Petition, Argument I at ¶ 16, Argument I at  ¶¶ 4-19.

[20]Respondent's App. at 105 (DN 14-2).

-11-

Court of Appeals.[21]

23)     The magistrate judge agrees the rule of procedural default bars this claim because the petitioner fails to show cause and prejudice to excuse his failure to brief this claim on appeal. *See Bray v. Andrews*, 640 F.3d 731, 735 (6th Cir. 2011) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991)) (internal quotations omitted) ("Under the procedural default doctrine, when a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.").

24)     In addition to the threshold defense to this claim, however, the magistrate judge will recommend denying this claim because it plainly lacks merit.  "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Hughes v. United States*, 358 F.3d 453, 457 (6th Cir. 2001).  Trial counsel presented medical testimony in the defense's case in chief.  Trial counsel's decision not to explore the implausible defense that blood loss resulted from injuries caused by treating physicians is the sort of trial performance that falls well within the range of professionally reasonable conduct.   Again, the magistrate judge will recommend denying this claim on the merits.

### 3.  Cross-Examination of Investigating Officer

25)     The investigating officer, Detective Leigh Whelan, interviewed the petitioner at the hospital on the day the victim presented with injuries.  At trial, Detective Whelan testified that when she explained that the interview was routine in cases of suspicious circumstances, the petitioner responded that he understood and that his father was in prison for "similar stuff,"

---

[21]Respondent's App. at 115-128 (DN 14-2).

namely, "child molestation."[22]

26)     Defense counsel moved to suppress these statements, as irrelevant and unduly prejudicial, and argued the jury may improperly find guilt based on the adage, "Like father, like son."  The trial court rejected this argument and permitted Detective Whelan to testify to these statements.[23]  The petitioner challenged this ruling on appeal and the Supreme Court of Kentucky affirmed.  The high court reasoned that because Detective Whelan's reference to "suspicious circumstances" did not suggest molestation specifically, the petitioner's response was substantially probative of his knowledge of the cause of the child's injuries.  The high court concluded that the probative value of the petitioner's response, thus, outweighed the danger of unfair prejudice, and that the petitioner's statements were properly admitted.[24]  On state collateral review, the Kentucky Court of Appeals held the ineffective-assistance-of-counsel claims related to this testimony had been waived on appeal and lacked merit under *Strickland*.[25]

27)     On federal review, the petitioner disputes that he even made the incriminating statement and further claims that counsel was ineffective for failure to impeach Detective Whelan on this point and for failure to assert *Miranda* grounds in the motion to suppress.[26]

---

[22]App. at 92, Ky. Opinion.

[23]App. at 93, Ky. Opinion.

[24]*Id.*

[25]App. at 175, Ky. App. Opinion.  On federal review, the respondent preserves the procedural default defense for denying the petition but also argues the underlying claims lack merit.

[26]Petition, Argument I at ¶ 21. The *Miranda* argument appears in the petition under headings: Argument I at ¶¶ 6-8 and Arguments IV and VI.  The petitioner complains that counsel failed to challenge Detective Whelan's "fraudulent and defective" investigation techniques, which the magistrate judge construes as redundant to his complaint that counsel failed to impeach the investigating officer's version of the hospital interview of the petitioner. (See Resp's Rule 5 Answer at 29 (DN 14)).

-13-

28)     The magistrate judge agrees with the state court's determination that the petitioner's claims do not meet the *Strickland* standard.  First, *Miranda* excludes unwarned statements made during custodial interrogation.  *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.").  Contrary to the petitioner's understanding, a criminal investigation does not automatically invoke a suspect's *Miranda* rights, even if the investigation includes the collection of a rape kit, the interview of treating physicians and contact with the forensic pediatrician, which in this case transpired before the detective interviewed the petitioner and other family members.  *Miranda* affords no protection to suspects during non-custodial interrogation.  Nothing in the record rebuts, by clear and convincing evidence, the state court's finding that the petitioner made this statement during a non-custodial interview.  Thus, *Miranda* warnings were not required.  The magistrate judge agrees with the state court determination that counsel's failure to argue *Miranda* in support of excluding these statements did not constitute deficient performance.

29)     Second, the failure to impeach the detective's account of the petitioner's statements falls short of showing objectively unreasonable performance of trial counsel.  On state collateral review, the petitioner argued that a child protective worker was present during the interview and could have contradicted the detective's testimony that the petitioner made such statements.  The appellate court noted that the petitioner had waived this claim by failing to make this argument to the trial court in his original motion to vacate, but concluded, nonetheless, that the claim failed to satisfy the deficiency prong under *Strickland*.  The magistrate judge

-14-

agrees.

30)     "Most cross-examinations can be improved but if that were the standard of

constitutional effectiveness, few would be the counsel whose performance [pass] muster."

*Jackson v. Bradshaw*, 681 F.3d 753, 764 (6th Cir. 2012) (internal quotations omitted).  In

addition, when deciding whether counsel's errors prejudiced a defendant, the court "must

consider the totality of the evidence before the ... jury, on the assumption that a verdict ... only

weakly supported by the record is more likely to have been affected by errors than one with

overwhelming record support."  *Id.,* at 760-61 (internal quotations omitted).

31)     The detective was one witness at trial among many, including the child's mother

and grandmother, and the petitioner, himself.  None of these witnesses discredited the detective's

testimony.  More important, the petitioner's incriminating statement stood among more

incriminating medical testimony that the extent and nature of the child's injury starkly

contradicted the petitioner's testimony that the child exhibited no signs of bleeding until the

grandmother placed the child on the toilet.  The jury clearly credited the prosecution's medical

case and discredited the petitioner's testimony denying that he harmed the child that morning

while in his sole care.  Thus, not only was counsel's failure to impeach the detective's account of

the petitioner's interview reasonable trial performance, the magistrate judge concludes that in

view of all the evidence, particularly the prosecution's key medical testimony, the claimed

deficiency was not sufficiently prejudicial under *Strickland* and falls far short of undermining

confidence in the jury's guilty verdict.

32)     Thus, the magistrate judge concludes the state court correctly and reasonably

applied *Strickland* based on a reasonable determination of the facts in the record before it when it

-15-

concluded that counsel's performance was not deficient for failure to seek suppression of the petitioner's non-custodial statements or for failure to impeach Detective Whelan's version of the petitioner's statements.  In addition, the magistrate judge concludes these claims fail to satisfy the *Strickland* prejudice prong.  Therefore, the magistrate judge will recommend denying this claim.

### 4. Uncalled Defense Witnesses

33)     The petitioner argues that counsel failed to compel by subpoena the trial attendance of alibi witnesses.[27]  The petitioner clarifies this claim in his amended pleadings and states that counsel also failed to investigate these witnesses.[28]  Again, the petitioner argues that the child's injuries occurred twelve to twenty-four hours before she presented to the hospital, that alibi witnesses would have testified that they were playing basketball with the petitioner on the evening before the hospitalization, but that counsel failed to investigate and to call these witnesses at trial.

34)     The respondent argues the petitioner procedurally defaulted these claims.  The magistrate judge agrees, finding no reference to these allegations in the parties' state court briefs.  However, the magistrate judge will recommend denying these claims because they plainly lack merit.  Attorney-client correspondence, provided by the petitioner, establishes that defense counsel investigated the basketball witnesses, but during trial, apparently made a decision not to

---

[27]Petition, Argument I at ¶¶ 4-5, 20.   In the appendix tendered with the petition is an attorney-client letter, dated Jan. 13, 2003, in which the public defender states she has obtained state funds with the trial court's leave to hire a defense medical expert to show that child must have sustained an accidental injury.   In a letter dated Aug. 24, 2003, counsel states that she had successfully retained Dr. Ophoven to testify, that she intended to call a witness who would state he was playing basketball with the petitioner from the night before the incident – the time of trauma according to Dr. Ophoven's expected testimony.

[28]Amended Petition, Argument I at ¶ 14 (DN 17).

present their testimony. "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness. *Hughes v. United States*, 358 F.3d 453, 457 (6th Cir. 2001). The decision whether to call certain witnesses, particularly after investigation of the alibi defense, is reasonable trial strategy rather than an example of gross error or incompetence.

35) The magistrate judge concludes that the petitioner fails to show that counsel's conduct fell below an objective standard of reasonableness or that any such error was sufficiently prejudicial and will, therefore, recommend denying these claims.

**5. Failure to Exclude Juror For Cause**

36) The petitioner claims one juror stated that he could not make an unbiased decision, "due to his involvement of similarities in the past."[29]  Rather than excuse the juror, the trial court rehabilitated the juror and found the juror to be unbiased.  The petitioner claims this constituted error which prejudiced his substantial rights.  The petitioner contends that many potential jurors were openly distraught at the prospect of viewing pictures in the case and that one prospective juror, who was ultimately seated, stated that his ex-wife had been sexually abused as a child.[30]

37) The state court rejected the claim of juror bias on collateral review.  The respondent argues the state court's determination was not contrary to nor an unreasonable application of *Strickland*.  The magistrate judge agrees with the state court determination.

38) "The benchmark for judging any claim of ineffectiveness must be whether

---

[29]Petition, Argument I at ¶ 6 (DN 1).

[30]Amended Petition, Argument V (DN 17).

counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  Any failure on the part of defense counsel to prevail in excluding a juror for cause does not constitute unreasonable trial performance nor does such performance undermine confidence in the outcome of the petitioner's trial.  The magistrate judge will therefore recommend denying this claim.

**B.  Sufficiency of Evidence**

39)    The petitioner argues the prosecution presented "no evidence" of guilt and that the "sole basis" for his conviction was that his daughter was in his care on the morning allegedly when the injury occurred – a fact the petitioner claims was not proven.  His conviction thus rests, the petitioner argues, on a violation of his federal right to due process.[31]

40)    The respondent argues the petitioner procedurally defaulted this claim by failing to argue his contention of insufficient evidence on direct appeal and, further, argues the claim lacks merit.  The state court, indeed, stated the petitioner had not properly preserved this claim for review, and further ruled that notwithstanding, the claim had no merit because sufficient circumstantial evidence supported the verdict.[32]  The respondent argues the state court correctly and reasonably determined this issue under clearly established constitutional law, *Jackson v. Virginia*, 443 U.S. 307 (1979) (holding sufficient evidence supports a verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

41)    The magistrate judge agrees this claim is wholly insubstantial and will recommend denying it on the merits, rather than on a default basis.  *See Lambrix*, 520 U.S. at

---

[31]Petition, Argument III, VIII.

[32]App. 178-179.

525 (again, holding that a ruling on procedural default is not necessary if the petitioner cannot prevail on the merits).

42)     Viewing the evidence in a light most favorable to the prosecution, the magistrate judge concludes a rational trier of fact could have found the essential elements of first-degree rape and assault beyond a reasonable doubt.[33]  The evidence at trial showed that the victim was unharmed when her mother left her in the petitioner's care in the morning; about three hours later, when the petitioner's mother arrived, the child was bleeding profusely from her vaginal area; an immediate hospital examination showed a laceration of the vaginal-rectal wall, slight bruising on the inner thighs, and a small petechial bruise around one eye; and, the petitioner could not explain how the injury occurred.  Dr. Spivack testified the injury was due to forcible penetration by an object too large for the vaginal canal rather than an accidental straddle event, given the nature and the extent of her injury.[34]  Dr. Spivack also testified that based on hematocrit levels, the injury occurred within four hours of her arrival at the hospital – a time frame including when the victim was in the petitioner's sole care.

43)     Therefore, the petitioner's argument that passion and prejudice, rather than evidence, informed the verdict is unfounded.  The due process clause permits the use of circumstantial evidence of guilt and, thus, contains no requirement that the prosecution remove every reasonable hypothesis except that of guilt.  *See Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  Accordingly, the magistrate judge agrees with the state court's ruling that from the evidence at trial, a rational trier of fact could have found the essential elements of the crimes

---

[33]Kentucky's definition of first-degree rape includes "sexual intercourse" with another person under twelve years of age.  KY. REV. STAT. ANN. § 510.040 (West 2011).

[34]Answer 27-28 (Doc. 14); App. 92, 173.

charged beyond a reasonable doubt.

      44)    The magistrate judge will therefore recommend denying this claim on the merits.

## C.  Other Due Process Violations

      45)    The petitioner challenges a number of adverse evidentiary rulings, the trial judge's impartiality, and other alleged trial errors and claims these constituted violations of his right to due process.  First, the petitioner complains the trial court ruled the victim incompetent to testify, due to her young age, and this ruling deprived him the opportunity to present numerous statements she made on the way to the hospital that "she was hurt from a fall."[35]  The petitioner also complains the evidence at trial did not disclose that the investigating officer's investigation included fraudulent, even coercive techniques, essentially trickery, such as threatening the grandmother's arrest, questioning family members at the hospital while gathering evidence of a crime including a "rape kit," without regard for the hospital staff's references to a straddle injury.[36]

      46)    In addition, the petitioner complains the evidence did not explain whether "the injury occurred by sexual intercourse with a male penis, or a forcible insertion by the 'plunger.'"[37]  The petitioner further complains the trial offered no explanation why the victim did not scream or cry on the day she was taken to the hospital.

      47)    The petitioner also complains the trial judge showed bias against the petitioner in general and specifically during voir dire, and committed numerous errors in its jury instructions,

---

[35]Petition, Argument II at ¶ 1.  The state court rejected this as a basis for ineffective assistance of counsel. (App. at 177.)

[36]Petition, Argument II and VI.

[37]Petition, Argument III at ¶ 1.

both challenges which the state court rejected on collateral review.[38]  The judge displayed bias and committed error, the petitioner claims, in the court's ruling which permitted the prosecution to call Dr. Spivak to rebut Dr. Ophoven's opinion of an earlier occurrence of injury, a challenge which the Kentucky Supreme Court rejected on direct appeal.[39]

48)    The magistrate judge concludes none these claims presents a meritorious due process basis for habeas relief.  The admissibility of evidence is an issue of state law and does not rise to a level of constitutional magnitude unless the error is so egregious that the petitioner was denied a fundamentally fair trial.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Sanborn v. Parker*, 629 F.3d 554 (6th Cir. 2010).  The petitioner's complaints against the trial court's rulings which excluded the victim's testimony, permitted Dr. Spivak's rebuttal, permitted gaps in the detective's testimony (aside from the role of counsel to question witnesses), seated jurors, and instructed the jury on matters of state law, fail to establish error, much less egregious error, warranting habeas relief.  In addition, the prosecution may prove guilt with circumstantial evidence and need not disprove one of the alternative methods which cause traumatic injury described by Dr. Spivak.  *See Clifford v. Chandler*, 333 F.3d 724, 728 (6th Cir. 2003).

49)    Finally, the trial included ample evidence to refute the petitioner's testimony that the victim did not scream or cry on the day she was taken to the hospital.  The jury clearly discredited the petitioner's version of events.  Instead, they credited Dr. Spivak's testimony that the nature and extent of the child's injuries contradicted the petitioner's claim that the child sustained a straddle injury.  In essence, the petitioner's legal arguments stem from the common,

---

[38]Petition, Arguments IX and X; App. at 177.

[39]Petition, Argument XI; App. at 95.

faulty premise that his allegations, the petitioner's statement of facts, are entitled to some deference or weight on federal habeas review.   To the contrary, the state court's determination of fact, and by extension the facts supporting the verdict, enjoy a presumption of correctness unless disproved by clear and convincing evidence. *Cullen,* 131 S.Ct. at 1400.  The petitioner has failed to meet this burden.

50)      Parenthetically, the petitioner's allegations at times confusingly refer to due process as well as errors of counsel.  Because the underlying due process claims have no merit, the magistrate judge further concludes that the petitioner's allegations likewise fail to support any related claims of ineffective assistance of counsel.

51)      The magistrate judge will recommend denying these claims.

**D. Double Jeopardy**

52)      The petitioner claims his conviction violates the Double Jeopardy Clause of the Fifth Amendment because the prosecution used the same evidence to support the conviction for first degree assault and the conviction for first-degree rape involving serious physical injury to the victim.  Double jeopardy protection extends not only to successive prosecutions but also to multiple punishments for the same offense.  Essentially, double jeopardy bars a court from imposing more punishment under a criminal statute than the legislature intended. *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

53)      In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court held that double jeopardy does not arise as long as each offense "requires proof of a fact which the other does not." *United States v. Davis*, 306 F.3d 398, 417 (6th Cir. 2002) (internal quotations omitted.)  On collateral review, the state court observed the two state criminal

-22-

offenses satisfied *Blockburger* because the rape conviction required proof of an additional fact, i.e, serious physical injury to the victim. The respondent argues the state court's reasoning is not contrary to nor an unreasonable application of federal law. The magistrate judge agrees and will therefore recommend dismissing this claim.

## III. RECOMMENDATION

The magistrate judge recommends that the court deny the petition for failure to satisfy conditions for granting habeas relief under § 2254(d) and (e).

## IV. CERTIFICATE OF APPEALABILITY

If the district court agrees with the magistrate judge's recommendation in this matter, it must determine whether a certification of appealability should issue. Before seeking an appeal, a habeas petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253. This does not require a showing that the appeal will succeed. *Slack v. McDaniel*, 529 U.S. 473 (2000). Rather, the petitioner must show that reasonable jurists could find debatable whether the petition should be resolved in a different manner or that the matter deserves further review. *Miller-El v. Cockrell*, 537 U.S. 322 (2003). The magistrate judge concludes no reasonable jurist could find debatable the conclusion that the claims in this petition

-23-

fail on the merits.  Therefore, the magistrate judge recommends denying a certificate of

appealability.

       DATE:

Copies to:     Counsel of Record

## N O T I C E

     Within fourteen (14) days after being served a copy of these proposed findings of fact,
conclusions of law, and recommendation, any party who wishes to object must file and serve
written objections, or further appeal is waived.  *Thomas v. Arn*, 782 F.2d 813 (6th Cir. 1984); 28
U.S.C. § 636(b)(1)(C).  A party may file a response to another party's objections within fourteen
(14) days after being served with a copy thereof.